

FILED
OCT 10 2019
Clerk, U.S. Courts
District Of Montana
Missoula Division

| | |
|---|---|
| KSANKA KUPAQA XA'ŁƆIN, et al., | CV 19–20–M–DWM |
| Plaintiffs, | |
| vs. | OPINION and ORDER |
| UNITED STATES FISH AND WILDLIFE SERVICE, et al., | |
| Defendants, | |
| and | |
| RC RESOURCES, INC., | |
| Defendant-Intervenor. | |

This case challenges decisions by the United States Fish and Wildlife Service and the United States Forest Service (collectively "Federal Defendants") about the Rock Creek Mine, a proposed mine that would lie beneath and adjacent to the Cabinet Mountains Wilderness. Plaintiffs are tribal and environmental organizations whose members use the Cabinet Mountains for cultural, spiritual, subsistence, and recreational activities. They claim Federal Defendants violated the Endangered Species Act ("ESA") by failing to reinitiate formal consultation on the mine's impact to grizzly bears (Claim I), determining the mine will not jeopardize bull trout (Claim II), and using a habitat surrogate to establish the

1

mine's authorized incidental take of bull trout (Claim III). Federal Defendants and Defendant-Intervenor RC Resources seek judgment on the pleadings for the Fish and Wildlife Service on Claim I and for all defendants on Claim III. (Docs. 32, 34.) They argue that the Fish and Wildlife Service has no obligation to reinitiate formal consultation under the ESA and therefore cannot be liable on Claim I and that Plaintiffs lack standing to assert Claim III. Alternatively, they argue that Claim III is unripe. For the following reasons, the motions are denied.

## BACKGROUND

The Rock Creek Mine is an underground copper and silver mine proposed near the town of Noxon in Sanders County, Montana. (Doc. 33-2 at 10.) The ore deposit lies beneath and adjacent to the Cabinet Mountains Wilderness; however, the mine's surface facilities and access points, except for a possible air intake, will be located outside of the wilderness boundary. (*Id.*) The mine's implementation is planned in two phases. (*Id.*) Phase I, which is expected to last two years, calls for the construction of an evaluation adit to obtain ore samples for metallurgical testing and collect hydrologic and geochemical data. (*Id.* at 11; Doc. 33-1 at 14–15.) Phase II comprises the development and operation of the mine. (Doc. 33-2 at 11.) Once in operation, the mine is expected to produce 10,000 tons of ore per day for 26 to 30 years. (*Id.*) A two-year period for shutdown and reclamation will follow. (*Id.* at 12.) In all, the project will last 33.5 to 38 years and will disturb 445

acres, including 136 acres on the Kootenai National Forest. (*Id.* at 11.)

Forest Service authorization of the mine is required because it will be located, in part, on National Forest land. (Doc. 33-1 at 8.) Further, because the mine may affect bull trout and grizzly bear populations protected under the ESA, the Forest Service must consult with the Fish and Wildlife Service before approving the mine. (*Id.* at 67); 16 U.S.C. § 1536(a)(2). The result of the consultation is the Fish and Wildlife Service's issuance of a "biological opinion" as to whether the mine is likely to jeopardize a protected species or adversely modify its critical habitat. 16 U.S.C. § 1536(b)(3); 50 C.F.R. § 402.14(g)(4). If the Service issues a "no jeopardy" opinion but determines the mine may incidentally "take" individual members of a protected species, it must specify the permitted level of take in an "incidental take statement." 16 U.S.C. § 1536(b)(4); 50 C.F.R. § 402.14(i)(1); *see also* 16 U.S.C. § 1532(19) (defining "take").

This is the fourth round of litigation on the Rock Creek Mine. (*See* Doc. 33-1 at 67 (summarizing litigation history).) Most recently, in 2010, the Forest Service's authorization was invalidated under the National Environmental Policy Act and the Forest Service Organic Administration Act. *Rock Creek All. v. U.S. Forest Serv.*, 703 F. Supp. 2d 1152, 1170, 1181 (D. Mont. 2010).

In 2017, the Forest Service reinitiated consultation with the Fish and Wildlife Service regarding the mine's effects on bull trout, which resulted in a

biological opinion ("2017 Bull Trout Biological Opinion") that the mine was not likely to jeopardize bull trout and an accompanying Incidental Take Statement. (Doc. 33-1 at 68; *see* Doc. 33-2.) At the same time, the Fish and Wildlife Service issued a supplement to its 2006 biological opinion on grizzly bears ("2017 Grizzly Bear Supplement"), concluding that reinitiating consultation on grizzly bears was not required. (Doc. 36-1 at 3; *see* Doc. 33-2.) In August 2018, the Forest Service issued a record of decision approving Phase I of the mine ("2018 Record of Decision"). (*See* Doc. 33-1.)

Plaintiffs filed this suit on January 25, 2019, seeking a declaration that the 2017 Bull Trout Biological Opinion, 2017 Grizzly Bear Supplement, and 2018 Record of Decision are invalid under the ESA. (Doc. 1.) RC Resources, which owns the mineral estate for the Rock Creek ore deposit, holds the mine's principal permits, and will be the mine operator, intervened as a matter of right on March 14, 2019. (Doc. 11.) Federal Defendants and RC Resources filed the present motions for judgment on the pleadings on July 19, 2019. (Docs. 32, 34.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a

4

matter of law." *Daewoo Elec. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017). In ruling on 12(c) motions, courts are limited to the material included in the pleadings. *Yakima Valley Mem'l Hosp. v. Wash. St. Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011); Fed. R. Civ. P. 12(d). However, courts may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice" without converting the motion into one for summary judgment. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). A document "may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ANALYSIS

### I. Failure to Reinitiate Formal Consultation (Claim I)

Federal Defendants seek judgment on the pleadings for the Fish and Wildlife Service on Claim I. Claim I alleges the Forest Service and Fish and Wildlife Service violated the ESA by failing to reinitiate formal consultation about the Rock Creek Mine's effects on grizzly bears notwithstanding new data about human-caused grizzly bear mortalities in the mine's vicinity. ESA violations are reviewed under the Administrative Procedure Act ("APA"), which governs judicial review of agency action. 5 U.S.C. § 706; *Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1235 (9th Cir. 2001). The APA authorizes two

5

types of challenges to agency decisions. First, under § 706(1), a reviewing court can "compel agency action unlawfully withheld or unreasonably delayed." Second, under § 706(2), a reviewing court can "hold unlawful and set aside agency action" that is found to be, among other things, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Federal Defendants construe Claim I as a "failure to act" claim under § 706(1). But while the Complaint does not specify which provision of the APA governs Claim I, it uses language from § 706(2). Specifically, it alleges that the 2017 Grizzly Bear Supplement is "arbitrary, capricious, and violates the ESA and its implementing regulations," (Doc. 1 at ¶ 98), and asks the Court to "set aside" the 2017 Grizzly Bear Supplement, (*id.* at ¶ 108). Claim I is thus a § 706(2) claim that the Fish and Wildlife Service's decision not to reinitiate consultation, as formalized in the 2017 Grizzly Bear Supplement, is arbitrary and capricious. Federal Defendants concede that a § 706(2) claim challenging the 2017 Grizzly Bear Supplement is cognizable against the Fish and Wildlife Service. (Doc. 39 at 2 n.2.) Based on that concession, Federal Defendants' motion for judgment on the pleadings is denied as to Claim I.

## II. Use of Unlawful Surrogate to Measure Incidental Take (Claim III)

Federal Defendants and Defendant-Intervenor seek judgment on the pleadings for the Fish and Wildlife Service on Claim III, which alleges the Fish

6

and Wildlife Service violated the ESA by relying on an unlawful metric in its Incidental Take Statement for bull trout. Rather than authorize the take of a specific number of bull trout, the Fish and Wildlife Service authorized the reduction in stream flows at three locations surrounding the mine. (Doc. 33-2 at 87.) Plaintiffs argue the stream flow surrogate fails to set an adequate "trigger" for when an unacceptable level of take is occurring, as required by the relevant regulations. However, because there will be no take of bull trout until Phase II of the mine is approved and implemented, Federal Defendants and Defendant-Intervenor argue the Plaintiffs do not have standing on Claim III. Alternatively, Federal Defendants argue Claim III is not ripe. Both arguments fail.

### A. Standing

The requirement that plaintiffs have standing to bring their claims is grounded in Article III of the Constitution, which limits federal courts' jurisdiction to cases and controversies. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). To have Article III standing, a plaintiff must (1) have suffered an injury in fact that (2) is causally connected and fairly traceable to the challenged conduct and (3) is likely to be redressed by a favorable decision in court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The plaintiff has the burden to establish these elements. *Spokeo, Inc.*, 136 S. Ct. at 1547. Here, Federal Defendants and Defendant-Intervenor only challenge the injury in fact prong of the inquiry.

"To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 1548 (quoting *Lujan* 504 U.S. at 560). Generally, "[a]n injury is imminent if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Mont. Envtl. Info. Ctr. v. Stone-Manning*, 766 F.3d 1184, 1189 (9th Cir. 2014) (internal quotation marks omitted). However, the imminence requirement is relaxed for plaintiffs asserting a procedural injury. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009). Plaintiffs alleging procedural injury need only show a reasonable probability that the challenged procedural violation threatens their concrete interest. *Citizens for Better Forestry v. U.S. Dep't of Agric.*, 341 F.3d 961, 972 (9th Cir. 2003).

Federal Defendants and Defendant-Intervenor argue that Plaintiffs have not alleged a "certainly impending" injury with respect to Claim III because no bull trout take will occur until Phase II of the mine, which has not been approved yet. Plaintiffs respond that the relaxed imminence standard applies because they have alleged a procedural injury. Plaintiffs are correct.

Claim III alleges the Fish and Wildlife Service's failure to specify an adequate "trigger" for the unacceptable level of bull trout take violates the ESA's implementing regulations at 50 C.F.R. § 402.14(i)(1). Section 402.14(i)(1) sets

forth the required components of an incidental take statement. Relevant here, when a surrogate is used to set the authorized level of take, the take statement must "set[] a clear standard for determining when the level of anticipated take has been exceeded." § 402.14(i)(1)(i). However, the regulation does not mandate use of a particular standard. Similarly, Plaintiffs do not argue for any particular standard here; they merely assert there must be a standard. The touchstone of a procedural injury is that the plaintiff does not have to allege what the result would be if the agency had followed proper procedures. *See Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1082–83 (9th Cir. 2015). Claim III meets that criteria. *See Wildearth Guardians v. Fish & Wildlife Serv.*, 342 F. Supp. 3d 1047, 1057 (D. Mont. 2018).

The question then becomes whether Plaintiffs have alleged a reasonable probability that the failure to set a clear standard threatens a concrete interest. *See Citizens for Better Forestry*, 341 F.3d at 972. Plaintiffs assert aesthetic, recreational, cultural, and spiritual interests in bull trout near the Rock Creek Mine. (Doc. 1 at ¶¶ 14–22.) These interests are sufficiently concrete, *Summers*, 555 U.S. at 494, and it is undisputed that the procedural rules governing incidental take statements set forth in 50 C.F.R. § 402.14(i)(1) are designed to protect those interests, *see Citizens for Better Forestry*, 341 F.3d at 969–71.

Further, Plaintiffs have shown that the alleged violation of the procedural

requirements poses a reasonably probable threat to their interests. Contrary to Federal Defendants and Defendant-Intervenor's argument, that the Forest Service has not yet approved Phase II of the mine does not doom the analysis. *See Idaho Conservation League v. Mumma*, 956 F.2d 1508, 1515 (9th Cir. 1992) (finding "that Congress and other third parties would have to act before actual development could take place is not dispositive" on injury in fact inquiry).

Defendant-Intervenor argues that the alleged harm to Plaintiffs' interests depends on a long chain of events, including that it wants to proceed after Phase I, that Phase II is approved, and that the Incidental Take Statement is not modified before then. (Doc. 35 at 15–16.) However, the inquiry "is whether there is a 'reasonable probability' that the challenged procedural violation will harm the plaintiffs' concrete interests, not how many steps must occur before such harm occurs." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1161 (9th Cir. 2017) (internal quotation marks omitted). A "contingent chain of events can create a reasonably probable threat to a plaintiff's interests" but "a purely speculative sequence of occurrences will not meet this standard." *Id.* (internal quotation marks omitted). Here, Defendant-Intervenor and its predecessors' long history of applying to operate the mine, and the Forest Service's long history of approving it, pushes the implementation of Phase II from the purely speculative to the reasonably probable. Consequently, Plaintiffs have standing on Claim III.

**B. Ripeness**

Federal Defendants argue that Claim III is not ripe unless and until Phase II is approved. However, because procedural injuries are ripe when the procedural violation occurs, Claim III is ripe. *Citizens for Better Forestry*, 341 F.3d at 977.

## CONCLUSION

IT IS ORDERED that Federal Defendants and Defendant-Intervenor's motions for judgment on the pleadings (Docs. 32, 34) are DENIED.

DATED this 10th day of October, 2019.

14:46 P.M.

Donald W. Molloy, District Judge
United States District Court